105.    The foregoing advertisement is misleading and/or deceptive as it fails to disclose that AstraZeneca has manufactured and distributed for sale Nexium solely to maintain the profits that derive from sales of a brand name drug and that AstraZeneca manufacturers a far less expensive drug that is equally as effective. The foregoing advertisement is part of an unfair scheme by AstraZeneca to falsely promote and create demand for this product through a combination of promotion to doctors and direct to consumer advertising. The effect of the unfair scheme was to create demand for Nexium where no such demand would have existed if AstraZeneca had told the truth about Nexium and a further effect was to increase the price of Nexium beyond its worth if the truth had been told. Further, by referring to clinical evidence, but by suppressing clinical evidence as to studies shown, a lack of superiority over Prilosec, the advertisement is made even additionally deceptive.

106.    The following advertisement appeared in print media:







**It's not just heartburn you may have to worry about, but the threat of a damaged esophagus.**

If you suffer from acid reflux disease, any food can trigger an attack of heartburn. And over time, all that churning acid could do real harm to your esophagus. So, if you've changed your diet and treated your symptoms, but the heartburn still comes back two or more days a week, ask your doctor about prescription NEXIUM.

Unlike your stomach, the lining of your esophagus offers little protection against churning acid. When acid rises into the esophagus—even if you feel only a little heartburn—it can eventually wear away the lining. This condition is called erosive esophagitis and only a doctor can determine if you have it.

That's why you should ask your doctor about NEXIUM, The Healing Purple Pill. For many, just one NEXIUM a day—along with a sensible diet and lifestyle changes—can mean 24-hour heartburn relief. And NEXIUM goes deeper, for most people healing the erosions in your esophagus caused by acid reflux disease. Most erosions heal in 4 to 8 weeks. Your results may vary.

NEXIUM has a low occurrence of side effects, the most common being headache, diarrhea, and abdominal pain. Symptom relief does not rule out serious stomach conditions.

Next time, ask your doctor about NEXIUM. The Healing Purple Pill.
**Healing Is Such A Great Feeling.**

AstraZeneca

**Please read the Important Product Information about NEXIUM on the following page and discuss it with your doctor.**

Visit purplepill.com today for a FREE Trial Offer

Nexium®
(esomeprazole magnesium)

1-800-79-NEXIUM

107. The foregoing advertisement is misleading and/or deceptive as it fails to disclose that AstraZeneca has manufactured and distributed for sale Nexium solely to maintain the profits that derive from sales of a brand name drug and that AstraZeneca manufacturers a far less expensive drug that is equally as effective. The foregoing advertisement is part of an unfair scheme by AstraZeneca to falsely promote and create demand for this product through a combination of promotion to doctors and direct to consumer advertising. The effect of the unfair

scheme was to create demand for Nexium where no such demand would have existed if AstraZeneca had told the truth about Nexium and a further effect was to increase the price of Nexium beyond its worth if the truth had been told.

108.    The following advertisement appeared in the print media:

# Nighty-Night?
# Or Up All Night?

## It's Different For People with Acid Reflux Disease.

How often is it that you're up at night because heartburn just won't leave you alone? If you've changed your diet, treated the symptoms, but still suffer from persistent heartburn 2 or more days a week, you could have acid reflux disease. And if you do, it can affect everything from how you sleep to what you eat. But for many people, just one prescription NEXIUM daily–along with sensible diet and lifestyle changes–can take away the heartburn, day and night, for a full 24 hours.

## Relieve the heartburn. Heal the damage.

NEXIUM tackles acid reflux at the source. That's important because even a little heartburn, over time, can still mean serious damage to your esophagus. For most people, NEXIUM heals that damage. Your results may vary.

Unlike your stomach, your esophagus offers no protection against churning acid. When acid rises into the esophagus, it can eventually wear away the lining. This condition is called erosive esophagitis and only a doctor can determine if you have it.

NEXIUM works by "turning off" many of the pumps that produce acid. Once the amount of acid has been reduced, NEXIUM can begin to heal any erosions caused by acid reflux disease. Most erosions heal in 4 to 8 weeks with NEXIUM. Your results may vary.

Talk with your health care professional to see if NEXIUM is right for you. NEXIUM has a low occurrence of side effects, including headache, diarrhea and abdominal pain. Symptom relief does not rule out serious stomach conditions.

Don't let acid reflux keep you up.

Relief. Healing. NEXIUM.

Nexium®
(esomeprazole magnesium)

For a Free Trial Offer, visit us at purplepill.com or call 1-800-79-NEXIUM

Please read the important Product Information about NEXIUM on the following page and discuss it with your doctor.

AstraZeneca

109. The foregoing advertisement is misleading and/or deceptive as it fails to disclose that AstraZeneca has manufactured and distributed for sale Nexium solely to maintain the profits that derive from sales of a brand name drug and that AstraZeneca manufacturers a far less

expensive drug that is equally as effective. The foregoing advertisement is part of an unfair scheme by AstraZeneca to falsely promote and create demand for this product through a combination of promotion to doctors and direct to consumer advertising. The effect of the unfair scheme was to create demand for Nexium where no such demand would have existed if AstraZeneca had told the truth about Nexium and a further effect was to increase the price of Nexium beyond its worth if the truth had been told.

110.    The following advertisement appeared in print media:





It's happening across America

Nationwide, doctors who specialize in acid reflux disease have switched more patients to NEXIUM–the purple pill–than to any other prescription of its kind.*

If you've [illegible] your [illegible] and [illegible] your diet, but [illegible] heartburn [illegible] more days a week, [illegible] acid reflux disease.

[illegible] diet and [illegible] [illegible] NEXIUM [illegible]

[illegible] in your esophagus [illegible] acid reflux [illegible] a doctor [illegible] weeks. Your results may vary.

So if you're [illegible], don't suffer in silence. Go back to your doctor and ask if NEXIUM is right for you. NEXIUM has a low [illegible] of side effects, the most common being headache, diarrhea, and abdominal pain. Symptom relief does not rule out serious stomach conditions.

Take advantage of our Free Trial Offer. Don't wait. Bring the [illegible] certificate to your doctor and ask if NEXIUM, the healing purple pill, is right for you. **Healing Is Such A Great Feeling.**

Visit us at purplepill.com or call 1-800-4-NEXIUM

Please read the Important Product Information about NEXIUM on the reverse side and discuss it with your doctor.

AstraZeneca

111. The foregoing advertisement is misleading and/or deceptive as it fails to disclose that AstraZeneca has manufactured and distributed for sale Nexium solely to maintain the profits that derive from sales of a brand name drug and that AstraZeneca manufacturers a far less expensive drug that is equally as effective. The foregoing advertisement is part of an unfair scheme by AstraZeneca to falsely promote and create demand for this product through a combination of promotion to doctors and direct to consumer advertising. The effect of the unfair scheme was to create demand for Nexium where no such demand would have existed if

AstraZeneca had told the truth about Nexium and a further effect was to increase the price of Nexium beyond its worth if the truth had been told. Further this advertisement also is deceptive where it states that "nationwide, doctors who specialize in acid reflux have switched more patients to Nexium," in that such switching was the result of an unfair and deceptive promotional scheme not, as implied in the advertisement, due to the superiority of Nexium.

112.    The following advertisement appeared in print media:



The clinical relevance of pH data has not been established.

The most frequently reported adverse events with NEXIUM are headache, diarrhea, and abdominal pain. Symptomatic response to therapy does not preclude the presence of gastric malignancy. Patients treated with PPIs and warfarin concomitantly may need to be monitored for increases in INR and prothrombin time.

Before prescribing NEXIUM, please see the brief summary of full Prescribing Information on next page.

[1]IMS Health, National Prescription Audit Plus: January 2003 through November 2003, based on TRx.

Please visit our Web site at www.Nexium-us.com

AstraZeneca

113.    The foregoing advertisement is misleading and/or deceptive as it fails to disclose that AstraZeneca has manufactured and distributed for sale Nexium solely to maintain the profits that derive from sales of a brand name drug and that AstraZeneca manufacturers a far less expensive drug that is equally as effective.  The foregoing advertisement is part of an unfair scheme by AstraZeneca to falsely promote and create demand for this product through a combination of promotion to doctors and direct to consumer advertising.  The effect of the unfair scheme was to create demand for Nexium where no such demand would have existed if AstraZeneca had told the truth about Nexium and a further effect was to increase the price of Nexium beyond its worth if the truth had been told.  Further, by referring to clinical data while suppressing clinical data regarding the lack of superiority over Prilosec, the advertisement is misleading.

114.    The following advertisement appeared in print media:



115.    The foregoing advertisement is misleading and/or deceptive as it fails to disclose

that AstraZeneca has manufactured and distributed for sale Nexium solely to maintain the profits

that derive from sales of a brand name drug and that AstraZeneca manufactures a far less expensive drug that is equally as effective. The foregoing advertisement is part of an unfair scheme by AstraZeneca to falsely promote and create demand for this product through a combination of promotion to doctors and direct to consumer advertising. The effect of the unfair scheme was to create demand for Nexium where no such demand would have existed if AstraZeneca had told the truth about Nexium and a further effect was to increase the price of Nexium beyond its worth if the truth had been told. This advertisement is also misleading in that the statement "Nexium heals better than the other leading medicine," fails to disclose that it does not heal better than Nexium's own drug Prilosec.

116. The foregoing advertisements are just examples of the themes and messages conveyed in hundreds of advertisements distributed to doctors and/or consumers. The net effect of this misleading campaign was to establish Nexium as a superior drug for acid relief and as such to allow it to command a price substantially in excess of generic Prilosec.

## V. NEXIUM IS MISBRANDED UNDER DELAWARE LAW

117. 16 Del Code §3302 provides:

> No person shall manufacture, sell or trade in, within this State, any article of food or drugs which is adulterated, misbranded, poisonous or deleterious within the meaning of this chapter.

118. 16 Del Code §3308 provides:

> For the purposes of this chapter, a drug is deemed to be misbranded:
> (4) If it is included in the definition of misbranding in the Federal Food, Drug and Cosmetic Act.

119. Regulations adopted pursuant to the Federal, Food, Drug and Cosmetic Act describe the requirements of advertising for drugs such as Nexium. These regulations provide definitions of misbranding as a result of inadequate advertising. In particular, sections of 21 CFR §202.1 provide in part:

(5) *''True statement'' of information.* An advertisement does not satisfy the requirement that it present a ''true statement'' of information in brief summary relating to side effects, contraindications, and effectiveness if:
(iii) It fails to reveal facts material in the light of its representations or material with respect to consequences that may result from the use of the drug as recommended or suggested in the advertisement.

(6) *Advertisements that are false, lacking in fair balance, or otherwise misleading.* An advertisement for a prescription drug is false, lacking in fair balance, or otherwise misleading, or otherwise violative of section 502(n) of the act, among other reasons, if it:
(i) Contains a representation or suggestion, not approved or permitted for use in the labeling, that a drug is better, more effective, useful in a broader range of conditions or patients (as used in this section *patients* means humans and in the case of veterinary drugs, other animals), safer, has fewer, or less incidence of, or less serious side effects or contraindications than has been demonstrated by substantial evidence or substantial clinical experience
(ii) Contains a drug comparison that represents or suggests that a drug is safer or more effective than another drug in some particular when it has not been demonstrated to be safer or more effective in such particular by substantial evidence or substantial clinical experience...

(7) *Advertisements that may be false, lacking in fair balance, or otherwise misleading.* An advertisement may be false, lacking in fair balance, or otherwise misleading or otherwise violative of section 502(n) of the act if it:
(ii) Uses the concept of ''statistical significance'' to support a claim that has not been demonstrated to have clinical significance or validity, or fails to reveal the range of variations around the quoted average results.

120. The advertisements and marketing schemes promulgated by Defendants violate the foregoing provisions.

## VI. CLASS ALLEGATIONS

121. Plaintiff brings this action on behalf of themselves and a Class defined as follows: All persons or entities who purchased Nexium in the four (4) years preceding the filing of this Complaint up to and including the present. Said Class includes third party payors, cash payors and those making a co-pay.

122. The Class consists of hundreds of thousands of individuals and entities throughout the United States, making individual joinder impractical. The disposition of the claims of the

Class members in a single class action will provide substantial benefits to all parties and to the Court.

123.    The claims of the representative Plaintiff are typical of the claims of the Class because it, like all Class members, has purchased and paid for Nexium and has been harmed by Defendants' misconduct because it would not have purchased Nexium had it known the truth.

124.    The factual and legal bases of Defendants' misconduct are common to all Class members and represent a common thread of deception and other misconduct resulting in injury to the representative Plaintiff and all members of the Class.

125.    There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions include, but are not limited to, the following:

        (a)    Whether Defendants' active concealment of and/or failure to disclose the true benefits and costs of Nexium was likely to mislead or deceive within the meaning of the state law;

        (b)    Whether Defendants' active concealment of and/or failure to disclose the true nature of Nexium's effectiveness is unfair within the meaning of state law, in that the harm to consumers and the public of such conduct outweighs its benefits;

        (c)    Whether Defendants' active concealment of and/or failure to disclose the true nature of Nexium's effectiveness and benefits is unlawful within the meaning of state consumer protection law;

        (d)    Whether Defendants engaged in false advertising within the meaning of when it represented, through its advertisements, promotions and other representations, that Nexium had characteristics that it does not actually have or omitted to disclose material facts regarding Nexium's actual characteristics;

        (e)    Whether Defendants should be declared financially responsible for notifying all Class members of the true nature of Nexium; and

        (f)    Whether Defendants should be ordered to disgorge, for the benefit of the Class, all or part of its ill-gotten profits received from the sale of Nexium, and/or to make restitution to Plaintiff and the members of the Class.

126. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including actions involving pharmaceutical sales. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interests adverse to those of the Class.

127. Plaintiff and the members of the Class suffered, and will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most members of the Class likely would find the cost of litigating their claims to be prohibitive, and will have no effective remedy at law. Because of the relatively small size of each individual Class member's claims, few Class members likely could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class members will continue to suffer harm and Defendants' misconduct will proceed without remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. Additionally, Defendants have acted and failed to act on grounds generally applicable to the representative Plaintiff and the Class and require Court imposition of relief as to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Violations of Delaware Consumer Fraud Act**

128. The preceding paragraphs of this Complaint are realleged and incorporated by reference as if fully set forth herein. Plaintiff asserts this claim on behalf of herself and the members of the Class.

129. Defendants' actions, as complained of herein, constitute unfair, and deceptive unlawful practices committed in violation of the Delaware Consumer Fraud Act. Defendants violated the law by engaging in the following:

(a) The totality of Defendants' conduct was unfair and part of an unlawful scheme to create demand for a product that would not have existed had the truth been told to doctors and consumers. In the context of the pharmaceutical industry, where doctors and consumers expect companies to accurately report on the efficacy of a drug, and where the drug companies have superior knowledge on efficacy, it is an unfair and deceptive practice to market a more expensive product without full disclosure that the virtually exact same product can be bought from the same manufacturer at a lower price and which has the same clinical benefits;

(b) Defendants' promotion of Nexium as "more powerful," offering "significant improvements over Prilosec," and as being "more effective" was false and/or misleading in that except for rare patients none of the above are true; in comparable doses Nexium is not more effective, in the 40 mg Nexium to 20 mg Prilosec there is only a slight improvement for heartburn and one trial of 40 to 20 showed no statistical difference. Further Nexium is far more expensive than comparable drugs and in fact Nexium was promoted solely for financial reasons and not due to any material increase in medical efficacy;

(c) Defendants' conduct was unfair, unlawful and deceptive in that Defendants' suppressed studies that demonstrated that Nexium was not more effective than Prilosec for most patients, and was not more effective at equivalent doses to the then therapeutic dose of Prilosec, and omitted to disclose this fact to doctors while promoting the drug;

(d) Defendants' conduct was unfair in that by promoting Nexium directly to consumers, without disclosure of the above, who have inferior knowledge and sophistication, Defendants created demand for Nexium that would not have existed if Defendants had disclosed the true cost and benefits of Nexium versus Prilosec and/or other PPIs;

(e) Defendants omitted material information known to them in order to induce doctors to prescribe Nexium and consumers to purchase Nexium and this information included the fact that there was no basis to tout Nexium as superior, several tests showed that it was not more effective and from a cost-benefit standpoint Nexium was inferior;

(f) Defendants' conduct in selling Nexium at a cost below Prilosec in order to establish brand loyalty, while secretly intending to raise prices once such loyalty was established, was unfair and deceptive;

(g) Defendants' conduct in sending sales teams into doctors' offices with free samples, false promotional material, and knowing that doctors do not have the time to analyze clinical studies and thus rely on deceptive promotional literature, was unfair and deceptive;

(h) Defendants' conduct in launching a promotional campaign to promote a drug that is not statistically proven to be more effective and is not beneficial from a cost/benefit analysis is an unfair and unconscionable practice; and

(i) Defendants engaged in an unfair and unlawful practice by promotion Nexium over Prilosec when Defendants knew that the FDA's review of the Nexium new drug application showed Nexium to be no more effective than Prilosec, and in fact, the FDA found, "there are no studies which demonstrate that H (Nexium) is superior to O (Prilosec) clinically or even statistically;" and

(j) Defendants' conduct in promoting and advertising Nexium in the manner undertaken, both through direct advertising as well as statements made in the course and conduct of detail sales representatives' action, constitutes misbranding of the product under 16 Del. Code §3308.

130. Plaintiff and each member of the Class were injured by Defendants' conduct in that the cumulative effect of Defendants' unfair and deceptive campaign was to cause each Class member to pay a price for Nexium that would not have been the established price if Defendants had disclosed that Nexium was no different from Prilosec.

131. All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

**SECOND CAUSE OF ACTION**
**Violation of the Consumer Protection Statutes of the 50 States**

132. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

133. Alternatively, Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of various state consumer protection statutes listed below:

(a) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, *et seq.*;

(b) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. Code § 40.50.471, *et seq.*;

(c) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, *et seq.*;

(d) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq.*;

(e) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*;

(f) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq.*;

(g) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq.*;

(h) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code § 2511, *et seq.*;

(i) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et seq.*;

(j)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*;

(k)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Stat. § 10-1-392, *et seq.*;

(l)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*;

(m)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*;

(n)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS § 505/1, *et seq.*;

(o)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5.1, *et seq.*;

(p)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code § 714.1b, *et seq.*;

(q)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*;

(r)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110, *et seq.*;

(s)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

(t)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 207, *et seq.*;

(u)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

(v)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93A, *et seq.*;

(w) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. § 445.901, *et seq.*;

(x) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325F.67, *et seq.*;

(y) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

(z) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vernon's Mo. Rev. Stat. § 407.010, *et seq.*;

(aa) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code § 30-14-101, *et seq.*;

(bb) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

(cc) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. § 598.0903, *et seq.*;

(dd) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

(ee) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*;

(ff) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. § 57-12-1, *et seq.*;

(gg) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*;

(hh) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

(ii) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01, *et seq.*;

(jj)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*;

(kk)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made representations in violation of Okla. Stat. tit. 15 § 751, *et seq.*;

(ll)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605, *et seq.*;

(mm)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

(nn)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et seq.*;

(oo)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.*;

(pp)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, *et seq.*;

(qq)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.*;

(rr)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*;

(ss)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. § 13-1 1-1, *et seq.*;

(tt)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. tit. 9, § 245 1, *et seq.*;

(uu)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

(vv)    Defendants have engaged in unfair competition or unfair, deceptive acts or fraudulent acts or practices in violation of Wash. Rev. Code § 19.86.010, *et seq.*;

(ww) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-101, *et seq.*;

(xx) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. § 100.20, *et seq.*; and

(yy) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. § 40-12-100, *et seq.*

134. As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and the Class have suffered actual economic damage by paying for Nexium instead of the equally efficacious generic version of Prilosec, or another generic equivalent.

**THIRD CAUSE OF ACTION**
**For Restitution, Disgorgement and Constructive Trust for Unjust Enrichment**

135. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

136. As a result of their unlawful conduct described above, Defendant has been and will continue to be unjustly enriched. Defendant's unlawful acts include misrepresenting the efficacy of Nexium. Specifically, Defendant has been unjustly enriched, to the detriment of Plaintiff and the Classes by the receipt of, at a minimum, unlawfully inflated prices obtained from the sale of Nexium.

137. Defendant has benefited from their unlawful acts and it would be inequitable for Defendant to be permitted to retain any of their ill-gotten gains resulting from the overpayments for Nexium made by Plaintiff and the Classes.

138. Plaintiff and members of the Class are entitled to the amount of Defendant's ill-gotten gains resulting from Defendant's unlawful, unjust and inequitable conduct. Plaintiff and the Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the Class members may make claims on a *pro rata* basis.

**FOURTH CAUSE OF ACTION**

**Tortious Interference With Contractual Relations**

139. Plaintiff and Class, as welfare funds that pay in whole or in part for the covered prescription drugs prescribed for their members/insureds, enter into contracts with pharmacy benefits managers ("PBMs"), pursuant to which PBMs have a fiduciary obligation to obtain the best possible deal for the cost of the prescription drugs prescribed for their members. It is well known to AstraZeneca that PBMs control 75 percent of drug purchasing by employers' health plans and insurers. Plaintiff's and the Class's relationships with PBMs are ongoing and are expected to continue.

140. AstraZeneca has intentionally and without privilege interfered with the contracts and agreements, to which Plaintiff and members of the Class are parties, with PBMs by deceiving the public into believing that Nexium is a superior product to Prilosec, and by providing rebates and other financial incentives to PBMs that include Nexium on their formularies. Thus, through deception and financial incentives, AstraZeneca interferes with the contractual obligation of PBMs to only include the most affordable version of esomeprazole on plan formularies.

141. As a direct and proximate result of the tortious interference by AstraZeneca, Plaintiff and the Class are obligated to reimburse their plan members for Nexium, when an equivalent over the counter version of the h-ug is available at no cost to Plaintiff and members of the Class, and a generic version is available at a substantial savings.

142. But for the success of AstraZeneca's tortious interference, Plaintiff and members of the Class would not pay for Nexium for their members, recognizing savings of millions of dollars annually.

143. AstraZeneca acted with wanton, willful, or reclcless disregard of the rights of Plaintiff, sufficient to justify an award of punitive damages.

144. Plaintiff and members of the nationwide Class seek compensatory damages for their injuries caused by these violations, plus punitive damages in an amount to be determined.

## FIFTH CAUSE OF ACTION
### Tortious Interference With Prospective Business Relations

145.    Plaintiff repleads and realleges the allegations in the above paragraphs.

146.    Plaintiff and the Class, as welfare funds that pay in whole or in part for the covered prescription drugs prescribed for their members, has maintained relationships with PBMs pursuant to which Plaintiff and the Class would reimburse such PBMs for the cost of the prescription drugs prescribed for their members that were not paid for by the members' co-payments. Plaintiff's and the Class's relationships with the PBMs were ongoing and were expected to continue.

147.    Arrangements between welfare funds and PBMs, such as the economic arrangements between Plaintiff and the Class and the PBMs with whom they contracted, are known to AstraZeneca to be commonplace in the pharmaceutical sales and distribution industry. Defendants were well aware that Plaintiff and the Class had such arrangements with PBMs.

148.    It is also commonplace in the industry for PBMs to list generic pharmaceuticals as well as the corresponding brand-name pharmaceuticals on their formularies when such generic pharmaceuticals become available on the market. This has the effect of greatly reducing the prescription drug reimbursement costs that welfare funds such as Plaintiff and the Class must pay on behalf of their members.

149.    Plaintiff and the Class had a reasonable expectation that their economic arrangements with the PBMs would remain undisturbed and would result in substantial decreases in Plaintiff's and the Class's drug reimbursement costs when generic versions of Prilosec became available on the market.

150.    By the conduct alleged throughout this complaint, AstraZeneca has intentionally and without privilege interfered with the contracts and agreements between Plaintiff and the Class and the PBMs. By misleading doctors and patients into believing that Nexium provided benefits over omeprazole, AstraZeneca has deprived Plaintiff and the Class of the expectation that their required reimbursement payments would shrink drastically, by depriving Plaintiff and

the Class of the expectation that they would be required to pay only for generic versions of Prilosec in most instances rather than having to pay for brand-name Nexium, which, as a result of AstraZeneca's scheme, was prescribed in virtually all instances where generic versions of Prilosec would have been prescribed.

151. As a direct and proximate result of the AstraZeneca's tortious interference with Plaintiff's and the Class's business relations and prospective business relations, Plaintiff and the Class have been damaged.

152. But for the success of AstraZeneca's tortious interference, Plaintiff and members of the Class would not have had to pay for Nexium for their members, recognizing savings of millions of dollars annually.

153. AstraZeneca acted with wanton, willful, or reckless disregard of the rights of Plaintiff and the Class, sufficient to justify an award of punitive damages.

154. Plaintiff and members of the nationwide Class seek compensatory damages for their injuries caused by these violations, plus punitive damages in an amount to be determined.

**SIXTH CAUSE OF ACTION**
**Negligent Misrepresentation**

155. In making the representations of fact to Plaintiff and the members of the Class described herein, Defendant failed to fulfill its duty to disclose the material facts set forth above. Among the direct and proximate causes of said failure to disclose were the negligence and carelessness of Defendant.

156. Plaintiff and the Class members, as a direct and proximate cause of Defendant's breach of its duties, reasonably relied upon such representations to their detriment.

157. By virtue of the foregoing, Plaintiff and the Class have been damaged.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and members of the Class request that the Court enter an order or judgment against Defendants as follows:

A. Certification of the Class and appointment of Plaintiff as Class Representatives and their counsel of record as Class Counsel;

B. Equitable relief in the form of restitution and/or disgorgement of all unlawful or illegal profits received by Defendants as a result of the unfair, unlawful and/or deceptive conduct alleged in this Complaint;

C. Prejudgment and post-judgment interest on such monetary relief, awarded in accordance with state law;

D. Appropriate injunctive relief;

E. An order awarding Plaintiff the costs of bringing this suit, including attorneys' fees;

F. All other relief to which Plaintiff and members of the Class may be entitled at law or in equity; and

G. Actual damages, punitive damages, injunctive relief, restitution of money or property, and such other relief as provided by law.

H. Plaintiff demands a jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, of all issues so triable.

Dated: April 5, 2005

CHIMICLES & TIKELLIS LLP

Pamela S. Tikellis (#2172)
A. Zachary Naylor (#4439)
Robert R. Davis (#4536)
One Rodney Square
P.O. Box 1035
Wilmington, DE 19899
Telephone: (302) 656-2500
Facsimile: (302) 656-9053

Of counsel:

ZIMMERMAN REED, PLLP
Ronald S. Goldser
651 Nicollet Mall, Suite 501

Minneapolis, MN 55402
(612) 341-0400

CHARFOOS & CHRISTENSEN, P.C.
JASON J. THOMPSON
5510 Woodward Avenue
Detroit, MI 48202
(313) 875-8080

GOODKIND LABATON RUDOFF
& SUCHAROW LLP
Barbara J. Hart
Christopher J. McDonald
100 Park Avenue
New York, New York 10017
Tel: (212) 907-0700
Facsimile: (212) 818-0477

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve Berman
Thomas M. Sobol
David S. Nalven,
One Main Street, 4th Floor
Cambridge, MA 02142
Telephone: (617) 482-3700

CHIMICLES & TIKELLIS LLP
James R. Malone, Jr.
Michael D. Gottsch
Daniel B. Scott
Timothy N. Mathews
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633

MILLER FAUCHER and CAFFERTY LLP
Ellen Meriwether
Bryan L. Clobes
One Logan Square
18th & Cherry Streets, Suite 1700
Philadelphia, Pennsylvania 19103
Telephone: (215) 864-2800
Facsimile: (215) 864-2810

FINKELSTEIN, THOMPSON & LOUGHRAN
L. Kendall Satterfield
Richard M. Volin
1050 30th Street, N.W.
Telephone: (202) 337-8000
Facsimile: (202) 337-8090

ZWERLING, SCHACHTER & ZWERLING, LLP
Robert S. Schachter
Joseph Lipofsky
Paul Kleidman
41 Madison Avenue
32nd Floor
New York, NY 10010
Telephone: (212) 223-3900
Facsimile: (212) 371-5969